Citation Nr: 1456904 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 12-28 964 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for obstructive sleep apnea, claimed as a sleeping disorder.

2. Entitlement to service connection for a disability claimed as manifestations of an undiagnosed illness or chronic multi-symptoms illness, to include fibromyalgia.

3. Entitlement to an initial, compensable disability rating for asthma, prior to April 29, 2011, and in excess of 10 percent thereafter. 
 
4. Entitlement to an initial, compensable disability rating for spondylosis, claimed as lower back.

5. Entitlement to an initial, compensable disability rating for bilateral hallux valgus.

6. Entitlement to an initial, compensable disability rating for allergic rhinitis, claimed as sinusitis.


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

A. Lindio, Counsel


INTRODUCTION

The Veteran served on active duty from January 2002 to August 2006. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a rating decision issued in January 2008 by the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas. In pertinent part, the RO granted service connection for spondylosis, bilateral hallux valgus, and allergic rhinitis, with each rated as noncompensable (effective from August 13, 2006), and denied service connection for obstructive sleep apnea and a disability claimed as manifestations of undiagnosed illness or chronic multi-symptoms illness, to include fibromyalgia.

In a September 2012 rating decision, the RO granted a 10 percent disability rating for asthma, effective from April 29, 2011. However, inasmuch as a higher rating is available for asthma, the Veteran is presumed to be seeking the maximum available benefit for this disability. See AB v. Brown, 6 Vet. App. 35, 38 (1993). Accordingly, the Board has now characterized the appeal pertaining to asthma as encompassing the matters set forth on the title page. See Fenderson v. West, 12 Vet. App. 119, 126 (1999).

In February 2013, the Veteran testified during a hearing before the undersigned Veterans Law Judge at the RO; a transcript of that hearing is of record. At that time, the Veteran submitted additional evidence and argument in support of his claims on appeal. This evidence was accompanied by a waiver of initial RO consideration. As such, there is no prejudice in the Board reviewing this evidence in the first instance. See 38 C.F.R. § 20.1304. 

The Board notes that, in addition to the paper claims file, the Veteran also has electronic Virtual VA and Veteran Benefits Management System (VBMS) paperless claims files. A review of the documents in such files reveals that they are not duplicative or irrelevant to some of the issues on appeal, and have not been considered by the RO. As such, the issues of entitlement to initial increased ratings for hallux valgus, asthma, spondylosis, and allergic rhinitis will be remanded for further development. 

The issues of entitlement to service connection for a disability claimed as manifestations of an undiagnosed illness or chronic multi-symptom illness, to include fibromyalgia, and entitlement to initial increased ratings for hallux valgus, asthma, spondylosis, and allergic rhinitis are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

Competent, probative evidence does not establish that the Veteran has, or, at any time pertinent to this appeal has had, obstructive sleep apnea. 





CONCLUSION OF LAW

The criteria for establishing service connection for obstructive sleep apnea are not met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. VA's Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA's duty to provide claimants with notice and assistance in the development of a claim. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2014); 38 C.F.R §§ 3.102, 3.156(a), 3.159, 3.326(a) (2014).

The notice requirements of the VCAA require VA to notify a claim of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, claimant is to provide; and what subset of the necessary information or evidence, if any, VA will attempt to obtain. 38 C.F.R. § 3.159(b). The notice requirements apply to all five elements of a service connection claim: (1) Veteran status, (2) existence of a disability, (3) a connection between the Veteran's service and the disability, (4) degree of disability, and (5) effective date of the disability. See Dingess v. Nicholson, 19 Vet. App. 473, 486 (2006).

In this case, the Board finds that VA has satisfied its duty to notify under the VCAA. Specifically, a November 2006 letter, which was sent prior to the initial unfavorable decision issued in January 2008, advised the Veteran of the evidence and information necessary to substantiate his service connection claim, as well as his and VA's respective responsibilities in obtaining such evidence and information. That letter further included notice of the evidence and information necessary to establish a disability rating and an effective date in accordance with Dingess v. Nicholson, supra. 

The record also reflects that VA has made reasonable efforts to obtain or to assist in obtain all relevant records pertinent to the matter herein decided. Pertinent evidence associated with the claims file consists of the Veteran's service treatment records, post-service VA examination and reports, and statements from the Veteran. The Veteran has not identified any additional, outstanding records that have not been requested or obtained. Therefore, the Board finds that VA has met its duty to assist the Veteran in obtaining relevant records.

Further, the Veteran has been medically evaluated in conjunction with his claim for service connection for obstructive sleep apnea. In this regard, VA sleep studies were performed and obtained in May 2006, which addressed the existence of the claim disability. The evaluation results from the VA sleep studies, taken together, are considered adequate for adjudication purposes and are of sufficient detail to enable the Board to reach a fully informed decision.

Additionally, in February 2013, the Veteran had an opportunity to set forth his contentions during before the undersigned Veterans Law Judge at a hearing. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that the Decision Review Officer or Veterans Law Judge who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. 

During February 2013 hearing, the undersigned Veterans Law Judge presented questions that addressed the issue concerning service connection for sleep apnea. Additionally, the Veteran provided testimony that spoke to his in-service and post-service experiences, which he alleges showed obstructive sleep apnea. The Veteran noted the treatment he had received in service, related his account of his sleep pattern following service, and reported his lack of treatment following service. Therefore, not only were the issues "explained . . . in terms of the scope of the claim for benefits," but "the outstanding issues material to substantiating the claim," were also fully explained. See Bryant, 23 Vet. App. at 497. As such, the Board finds that, consistent with Bryant, the undersigned complied with the duties set forth in 38 C.F.R. § 3.103(c)(2) and that the Board may proceed to adjudicate the claim based on the current record.

The Board finds that VA has fully satisfied the duty to assist. In the circumstances of this case, additional efforts to assist or notify the Veteran in accordance with the VCAA would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991) (strict adherence to requirements of the law does not dictate an unquestioning, blind adherence in the face of overwhelming evidence in support of the result in a particular case; such adherence would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994) (remands which would only result in unnecessarily imposing additional burdens on VA with no benefit flowing to the appellant are to be avoided). VA has satisfied its duty to inform and assist the Veteran at every stage in this case, at least insofar as any errors committed were not harmful to the essential fairness of the proceeding. Therefore, he will not be prejudiced as a result of the Board proceeding to the merits of his claim.

II. Obstructive Sleep Apnea

The Veteran contends that he developed obstructive sleep apnea in service. (February 2013 Board hearing). The Board notes that the Veteran separated from service in August 2006 and filed the current claim shortly thereafter.

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. 1110, 1131 (West 2002); 38 C.F.R. 3.303(a) (2014).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

In certain cases, service connection may also be established under 38 C.F.R. § 3.303(b) by: (a) evidence of a chronic disease shown as such in service (or within an applicable presumptive period under 38 C.F.R. § 3.307) and subsequent manifestations of the same chronic disease; or, (b) if the fact of chronicity in service in not adequately supported, by evidence of continuity of symptomatology. However, the United States Court of Appeals for the Federal Circuit has held that the provisions of 38 C.F.R. § 3.303(b) relating to continuity of symptomatology can be applied only in cases involving those conditions explicitly recognized as chronic under 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Inasmuch as sleep apnea is not listed as chronic disease under 38 C.F.R. § 3.309(a), the provisions of 38 C.F.R. § 3.303(b) pertaining to continuity of symptomatology are not for application in this case.

The Veteran claims that he underwent a sleep study in service and received a diagnosis of sleep apnea. (See February 2013 Board hearing). To that end, at his Board hearing, the Veteran submitted copies of some April 2006 service treatment records, including his separation examination, indicating that sleep apnea may have been suspected, but not necessarily establishing that he actually had a diagnosis of sleep apnea. His April 2006 examiner found "Possible SLEEP APNEA - being evaluated". A few service treatment records also indicate that the Veteran may possibly have sleep apnea (April 12, 2006; May 3, 2006). However, the May 9, 2006, sleep study found "no sleep disordered breathing shif [sic.] work problem is suspected". The physician specifically noted "a definite finding of OSAHS [obstructive sleep apnea/hyponea syndrome] was not present . . . . Shift work schedule would be to do with daytime sleepiness." In a follow-up sleep study of May 16, 2006, the medical provider only diagnosed the Veteran with "SLEEPING DIFFICULTY" and noted possible anxiety.

During his February 2013 hearing, the Veteran stated that he was not receiving treatment for sleep apnea, and he has not otherwise indicated that since service a medical professional has diagnosed him with sleep apnea.

The Board emphasizes that Congress has specifically limited entitlement to service connection for disease or injury to cases where such incidents have resulted in disability. See 38 U.S.C.A. § 1110; see also 38 C.F.R. § 3.310. Thus, where, as here, pertinent medical evidence does not support a finding of a presently existing diagnosis of sleep apnea, there can be no valid claim for service connection for this condition. See Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). 

The evidence of record that is supportive of the Veteran's claim is his lay statements attesting to have a diagnosis of obstructive sleep apnea and continued sleep problems. However, even during his Board hearing, the Veteran testified to the effect that he did not know if he was unable to breathe while sleeping. He stated that "sometimes, you know, you do stop breathing and wake up, but I don't know when I'm waking up. I don't -- not like [Veteran making gasping sounds], you know, trying to breathe. It's just that I just wake up."

Furthermore, although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, a current diagnosis of obstructive sleep apnea falls outside the realm of common knowledge of a lay person. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer); see also Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). "Competent medical evidence" is evidence that is provided by a person qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. 38 C.F.R. § 3.159(a). In this regard, a diagnosis of obstructive sleep apnea is based on physical examination, to include a sleep study, and medical knowledge, and there is no indication that the Veteran has the requisite knowledge to make such determinations. Indeed, the Board notes that such a diagnosis is not even easily made by medical professionals, as documented by the numerous service treatment records indicating that obstructive sleep apnea may have been suspected, but which the medical professionals deferred providing an actual diagnosis until the Veteran underwent a sleep study. Again, the May 2006 sleep study yielded negative results; the physician specifically found that the Veteran did not have obstructive sleep apnea.

To the extent that the Veteran believes that he received a diagnosis of obstructive sleep apnea in service, such a diagnosis is not borne out by the objective evidence of record. The Board acknowledges that the Veteran's reliance on the service treatment records, as to the issue of the diagnosis of sleep apnea, is relevant even though its probative value is slight. In this case, the Veteran's belief is based upon the service treatment records which indicate a "possible" diagnosis of sleep apnea. However, as discussed above, the diagnosis of this condition is medically complex and is determined by objective data from a sleep study; in which, the clinical data are interpreted by trained medical professionals. In the instant case, the objective medical evidence of record fails to reveal an actual, definitive diagnosis of sleep apnea in the service treatment records. Indeed, his May 2006 sleep study results show that he does not have obstructive sleep apnea. His follow-up sleep study (evaluation) later that month similarly found that the Veteran had a sleep disturbance, but did not find obstructive sleep apnea. Thus, the Board finds the Veteran's reliance on the service treatment records to be of minimal probative value compared to the May 2006 sleep studies against the claim.

The Board notes that the Veteran is already service-connected for depressive disorder, not otherwise specified, and generalized anxiety disorder (April 2010 rating decision). To the extent that the Veteran has a sleep disorder as part of such service-connected disability, the evaluation of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14.

For all the foregoing reasons, the Board determines that the claim of service connection for obstructive sleep apnea must be denied. As the preponderance of the evidence is against the claim, the benefit of the doubt rule does not apply. See Gilbert v. Derwinski, 1 Vet. App. 49, 58 (1991); 38 C.F.R. § 3.102.



ORDER

Service connection for obstructive sleep apnea is denied.


REMAND

The Veteran contends that compensable disability ratings are warranted for his service-connected spondylosis, bilateral hallux valgus and allergic rhinitis. He further contends that for his service-connected asthma, a compensable disability rating is warranted prior to April 29, 2011 and in excess of 10 percent from that time. Finally, at his February 2013 Board hearing, the Veteran maintained that he has a disability claimed as manifestations of an undiagnosed illness or chronic multi-symptoms illness, due to the exposure to "Gulf War" hazards, which he clarified included a claim for fibromyalgia.

As to his increased rating claims, the Veteran's Virtual VA claims file includes a September 2010 VA examination that addressed each of those disabilities, but was not considered by the AOJ. That examination thus contains pertinent to those claims and needs to be considered by the AOJ. If the claim is not fully granted, the issuance of a supplemental statement of the case (SSOC) is required. See 38 C.F.R. § 19.31. 

In regards to the spondylosis claim, the Board specifically notes that the September 2010 VA examiner found signs of intervertebral disc syndrome (IVDS) and radiculopathy. However, the most recent December 2011 VA examiner made no such findings. To ensure that the record includes sufficient medical evidence to properly evaluate the disability under consideration, the Board finds that a more contemporaneous examination, with findings responsive to the applicable rating criteria, is needed. See 38 C.F.R. § 5103A; 38 C.F.R. § 3.159; Snuffer v. Gober, 10 Vet. App. 400, 403 (1997). The Board further notes that the VA examiner should specifically consider whether the Veteran's complaints of bladder problems and erectile dysfunction are due to that disability. (July 29, 2005, service treatment record and September 2010 VA examination). 

As to his allergic rhinitis, during his February 2013 hearing the Veteran indicated symptoms more severe than noted in his last VA examination, in December 2011. The Board similarly notes that the last VA examination for his asthma was in December 2011. A more contemporaneous examination, with findings responsive to the applicable rating criteria, is needed. See 38 C.F.R. § 5103A; 38 C.F.R. § 3.159; Snuffer, supra. 

As to a disability claimed as an undiagnosed illness or chronic multi-symptom illness, to include fibromyalgia, due to exposure to Gulf War hazards, the Veteran related that he has had widespread pains in random places around his body since service. Given that the Veteran served in Southwest Asia and his current complaints, the Veteran should be afforded a VA examination to determine whether the Veteran has widespread pain that affects random parts of his body; and, if so, whether such symptoms can or cannot be associated to with a known clinical diagnosis; or, is (or is not) manifestations of a chronic multi-symptom illness, to include fibromyalgia. See McLendon v. Nicholson, 20 Vet. App. 79 (2006).

The Veteran should be given an opportunity to identify any VA or non-VA healthcare provider who treated him for any of his claimed disorders, specifically including for the unnamed treatment providers for his back and hallux valgus, which he reported during the February 2013 Board hearing. After securing any necessary authorizations from him, obtain all identified treatment records. All reasonable attempts should be made to obtain such records. If any records cannot be obtained after reasonable efforts have been made, issue a formal determination that such records do not exist or that further efforts to obtain such records would be futile, which should be documented in the claims file. The Veteran must be notified of the attempts made and why further attempts would be futile, and allowed the opportunity to provide such records, as provided in 38 U.S.C.A. § 5103A(b)(2) and 38 C.F.R. § 3.159(e).





Accordingly, the case is REMANDED for the following actions:

1. The Veteran should be given an opportunity to identify any VA or non-VA healthcare provider who treated him for any of his claimed disorders, specifically including for the unnamed treatment providers for his back and hallux valgus, which he reported during the February 2013 Board hearing. After securing any necessary authorization from him, all reasonable attempts should be made to obtain such records, consistent with 38 U.S.C.A. § 5103A(b)(2) and 38 C.F.R. § 3.159(e).

2. Once all medical records are associated with the claims file, the AOJ should request a new VA examination to address whether the Veteran has a disability claimed as manifestation of an undiagnosed illness or chronic multi-symptom illness, to include fibromyalgia, due to his service. The entire claims file and a full copy of this REMAND must be made available to the individual designated to examine the Veteran, and the examination report should include discussion of the Veteran's documented history and assertions. All indicated tests and studies (to include laboratory tests, if necessary) should be accomplished (with all results made available to the requesting physician prior to the completion of his or her report), and all clinical findings should be reported in detail.

Based on a review of the claims file, the results of the VA examination, and the Veteran's statements, the examiner is asked to address the following questions:

a) Does the Veteran suffer from widespread pain that affects random parts of his body?

b) If the answer to (a) is "Yes," can the Veteran's widespread pain that affects random parts of his body be associated with a known clinical diagnosis? If so, please provide the diagnosis of the condition.

c) If the answer to (b) is "Yes," is it at least as likely an not (a 50 percent or greater probability) any such diagnosed condition had its onset during service; or, was it caused by, or the result of, any injury, illness or incident that occurred during service, to include any service in the Southwest Asia during the Gulf War?

d) Does the Veteran suffer from fibromyalgia? If so, does this condition require continuous medication for control?

e) If the Veteran has widespread pain that affects random parts of the body, which CANNOT be associated with a known clinical diagnosis, it is at least as likely as not (50 percent or greater probability) that the Veteran's symptoms of widespread pain has either: (i) existed for 6 months or more; or, (ii) exhibited intermittent episodes of improvements and worsening over a 6-month period? In answering the questions in (e), the examiner must address whether the Veteran's symptoms of widespread pain are objectively indicated by history, physical examination and/or laboratory tests. In making this assessment, the examiner must also consider: non-medical indications which can be independently observed or verified, such as time lost from work; evidence that the Veteran sought medical treatment for his symptoms; evidence affirming changes in the Veteran's appearance, physical abilities, and mental or emotional attitude; and lay statements from individuals who are able to attest, based on personal experience, to their observations of the Veteran's symptoms.

The reasons and bases for each opinion are to be fully explained with a complete discussion of the pertinent (lay and medical) evidence of record and sound medical principles, including the use of any medical literature (if deemed warranted), which may reasonably explain the medical analysis in the study of this case.

3. After obtaining all outstanding records, the AOJ should schedule an appropriate VA examination to determine the current severity and all manifestations (orthopedic and neurologic) of the Veteran's lumbar spine disability, characterized as spondylosis. The VA examiner should also specifically determine whether the Veteran currently has radiculopathy, a bladder disorder or erectile dysfunction due to service or the lumbar spine disability. The entire claims file and a full copy of this REMAND must be made available to the individual designated to examine the Veteran, and the examination report should include discussion of the Veteran's documented history and assertions. All indicated tests and studies (to include laboratory tests, if necessary) should be accomplished (with all results made available to the requesting physician prior to the completion of his or her report), and all clinical findings should be reported in detail.

The examiner is asked to address the following:

(a) The examiner should conduct range of motion testing of the lumbosacral spine (expressed in degrees). He/she should render specific findings as to whether there is objective evidence of pain on motion, weakness, excess fatigability, and/or incoordination. If pain on motion is observed, he/she should indicate the point at which pain begins. In addition, he/she should indicate whether, and to what extent, the Veteran experiences likely functional loss of the lumbosacral spine due to pain and/or any of the other symptoms noted above during flare-ups and/or with repeated use; to the extent possible, the examiner should express any such additional functional loss in terms of additional degrees of limited motion.

The clinician should also indicate whether the Veteran has any ankylosis of the lumbosacral spine; and, if so, the extent of any such ankylosis, and whether the ankylosis is favorable or unfavorable.

(b) The clinician should state whether the Veteran has intervertebral disc syndrome (IVDS). If so, he/she should state whether IVDS results in incapacitating episodes, and if so, the duration of those episodes over any 12 month periods during the appeal period (from October 2006). 

(c) The examiner should indicate whether the Veteran's service-connected lumbar spine disability results in neurologic impairment. 

(i) If the examiner finds that the Veteran has radiculopathy of any extremity, the examiner should identify with specificity the precise nerve(s) involved. For each affected nerve, the examiner should indicate, with respect to each affected extremity, whether the impairment is best characterized as neuritis, neuralgia, or paralysis. The examiner should then identify the associated symptoms of the neurological deficit and the severity of the deficit (i.e., whether there is incomplete paralysis that is mild, moderate, or severe).

(ii) If the examiner finds that the Veteran has any other neurological disorder, specifically including a bladder disorder and erectile dysfunction:
 
(A) the examiner should determine whether such disorder is a neurological manifestation of the service-connected lumbosacral spine disability; 

(B) if the examiner finds that the Veteran's disorder(s) is NOT a neurological manifestation of the service-connected lumbosacral spine disability, he/she should opine as to whether it is at least as likely as not related to the Veteran's active service, or caused or aggravated by his service-connected lumbosacral strain; or 

(C) if the examiner finds that any disorder was aggravated by a service-connected disability, he/she should determine, if possible, to what extent it was aggravated beyond the natural progression of the disorder.

If the examiner finds that the Veteran does NOT currently have such a neurological disorder (specifically including the claimed bladder disorder and erectile dysfunction), the examiner should specifically make such a finding.

If possible, the examiner shall also consider any functional impairment caused by his disability. 

To the extent possible, the VA examiner should reconcile his/her findings with any that may conflict, specifically those which are at variance with the September 2010 and December 2011 VA examination reports.

The reasons and bases for each opinion are to be fully explained with a complete discussion of the pertinent (lay and medical) evidence of record and sound medical principles, including the use of any medical literature (if deemed warranted), which may reasonably explain the medical analysis in the study of this case.

4. After completion of the above, schedule the Veteran for a VA examination of the service-connected allergic rhinitis and asthma, to determine the current severity of those disabilities. The entire claims file and a full copy of this REMAND must be made available to the individual designated to examine the Veteran, and the examination report should include discussion of the Veteran's documented history and assertions. All indicated tests and studies (to include laboratory tests, if necessary) should be accomplished (with all results made available to the requesting physician prior to the completion of his or her report), and all clinical findings should be reported in detail.

(a) In regards to the allergic rhinitis, the examination report must discuss:

 (i) the presence of polyps, and 
 
(ii) the absence of polyps, but with a (A) greater than 50 percent obstruction of nasal passages on both sides or (B) complete obstruction of one side. 

(b) In regards to the asthma, the examination report must discuss:

 (i) the Veteran's FEV-1 and FEV-1/FVC,
 
(ii) the extent of his monthly visits to a physician to care for exacerbations, and

(iii) whether the Veteran has received medication, and if so how many or frequency of: (A) high dose corticosteroids or immune-suppressive medications, (B) courses of systemic (oral or parenteral) corticosteroids each year, (C) inhalational or oral bronchodilator therapy, and/or (D) inhalational anti-inflammatory medication.

If possible, the examiner shall also consider any functional impairment caused by each disability. 

The reasons and bases for each opinion are to be fully explained with a complete discussion of the pertinent (lay and medical) evidence of record and sound medical principles, including the use of any medical literature (if deemed warranted), which may reasonably explain the medical analysis in the study of this case.

5. When the development requested has been completed, the AOJ should again review the case on the basis of the additional evidence. If the benefits sought remain adverse to the Veteran, the AOJ should furnish the Veteran and his representative (if any) a supplemental statement of the case and a reasonable opportunity to respond before returning the record to the Board for further review.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
DEBORAH W. SINGLETON 
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs